IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

ROSCOE JOYNER d/b/a
Joyner Construction Company                                          PLAINTIFF

v.                          No. 2:22-cv-62-DPM

CITY OF DUMAS, ARKANSAS                                              DEFENDANT

## ORDER

Roscoe Joyner, a black man, has been a construction contractor in Dumas, Arkansas for nearly forty years. He has won construction jobs from the City of Dumas, its agencies, and other public entities in and around Desha County "many dozens of times." *Doc. 40 at 1*. In January 2022, the city rejected Joyner's bid to clear some land. He believes his race was the reason. He has sued the city, pressing various federal and state law claims. The city moves for summary judgment. Many of the material facts are undisputed. Where there is a dispute, the Court takes the record in the light most favorable to Joyner. *Oglesby v. Lesan*, 929 F.3d 526, 531-32 (8th Cir. 2019).

When Arkansas cities wish to spend more than thirty-five thousand dollars, they must generally do so through a competitive bidding process. ARK. CODE ANN. § 14-58-303(b)(2)(A) (West 2021) (effective 28 July 2021 to 31 July 2023). The mayor solicits bids by

advertising in a local newspaper; interested parties submit bids; and the bids received are opened on a set date in the mayor's presence. After opening the bids, the mayor has two choices: "award the bid to the lowest responsible bidder," or "reject any and all bids received." *Ibid.*

This case is about competitive bidding for a Dumas project. The relevant events happened between late 2021 and early 2022, when the city sought bids to construct a new maintenance building. Construction was to begin around March or April 2022. But the building site—a thirty-acre tract of land—needed to be cleared first. In October 2021, the city council authorized then-Mayor Flora Simon to advertise for land-clearing bids. Three months later, on 11 January 2022, she did.

> **Accepting Bids**
>
> City of Dumas is accepting bids for the cleaning of all of the old Dollar General Warehouse property located on Hwy 54 West. The deadline for the bids is January 21, 2022. In the bid, include in addition to the cost the approximate time frame to have the property cleared. Bids are to be mailed to the attention of Mayor Flora Simon, P O Box 157, Dumas, AR 71639, or can be hand delivered to Dumas City Hall, 155 East Waterman Street.

*Doc. 23-1 at 8.*

This ad ran twice in three local newspapers. Only two companies submitted bids: Pat Clark Trucking Company and Richard

Pambianchi Construction Company, LLC.  Joyner missed the deadline.  The reasons, he says, were the ten-day submission window and an inability to get a bid packet from the mayor's office.

Mayor Simon reviewed the bids two or three days after the January 21st deadline.  Both were based on the costs needed to clear all thirty acres.  They were pricier than she expected.  The mayor wrote a memo to the city council's maintenance building committee on January 24th.  In it, she suggested that the bidding period be re-opened and the project's scope be narrowed to clear only "the area that is a must for the building." *Doc. 23-1 at 28*.  The rest could be cleared later.

The next day, the committee met and adopted the mayor's suggestions.  To save money and time, the committee cut the project's scope from clearing all thirty acres to only two; extended the bid-submission deadline to January 31st; and asked the two first-round bidders to revise their bids.  The mayor did not publish an invitation for second-round bids.  But Joyner caught wind of the changes and requested a bid packet from the street department.  They gave him one—redacted copies of the original two bids.

The full city council held a special meeting to discuss the second-round bids on January 31st.  Clark and Pambianchi had already submitted revised bids.  The street department's superintendent called Joyner two hours before the meeting because he "hadn't turned [his bid packet] back in." *Doc. 23-1 at 15*.  Joyner attended the meeting and

submitted a bid from his sole proprietorship, Joyner Construction. The city considered it along with the two revised bids. These were the three second-round bids.

- **Clark**.........................Total costs of $235,000 to clear the two acres, but no time estimate;
- **Pambianchi**............Daily costs of $7,260 to clear *all thirty acres*, but no time estimate; and
- **Joyner**......................Total costs of $135,000 to clear the two acres with a six-week time estimate.

*Doc. 23-1 at 46–49*.

The bulk of the parties' dispute centers around Pambianchi's second-round bid. It didn't include a total cost estimate; it only provided daily costs with no timeline. During the meeting, Councilman Roy Dalton told the council that he had spoken to Pambianchi. *Doc. 28 at 0:13:36–0:14:22* (Meeting Audio). He said Pambianchi could do the job in "fifteen to twenty" days, but that he would not use "the skidder steer with the hammer and the dozer" every day. *Ibid.*

The council members calculated Pambianchi's daily costs for using every piece of equipment to be $7,260/day. *Doc. 28 at 0:18:47–0:19:05*. They then multiplied that number by twenty days and arrived at a high-end cost of $145,800. *Doc. 28 at 0:19:07–0:19:57*. But they determined that, if Pambianchi used the skidder and the dozer half the time, his total would be $130,200. *Doc. 28 at 0:20:04–0:20:14*. The city

- 4 -

council determined that Pambianchi was the lowest bidder: $130,200 for all thirty acres in fifteen to twenty days. It awarded him the contract. *Doc. 28 at 0:28:04–0:30:35.* Pambianchi ultimately cleared all thirty acres for less than $130,000, although he didn't finish until several months later.

*

Joyner brings claims under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act for procedural due process violations and for race discrimination in violation of 42 U.S.C. § 1981. He also claims an illegal exaction under state law. The city defends the legitimacy of its bidding process. But first, it challenges Joyner's standing to bring the case.

The standing/capacity issues drop out of the case. The record is now clear. No Joyner-related LLC or corporation was involved in the bid. It was just Mr. Joyner, doing business as Joyner Construction Company. He has both standing and capacity to press the claims made. *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517, 524 (8th Cir. 1985) (standing); *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, at 12, 461 S.W.3d 317, 324-25 (capacity).

**Procedural Due Process.** Joyner contends he was the true lowest bidder and that the city tinkered with Pambianchi's numbers to undercut his bid. He claims the city violated his due process property rights in the land-clearing contract. He attacks the procedure used to deny him the contract, not the substance of what the city did. *Compare*

*L & H Sanitation*, 769 F.2d at 523. The threshold issue is whether he had, as a matter of Arkansas law, a property interest in the contract.

"Arkansas statutes create a property interest in a competitively bid public contract for the lowest bidder that complied with the bidding specifications and procedures." *Harris v. Hays*, 452 F.3d 714, 719 (8th Cir. 2006). But the Arkansas Supreme Court has made clear that "lowest" doesn't necessarily mean the "lowest monetary bidder." *Conway Corp. v. Construction Engineers, Inc.*, 300 Ark. 225, 229, 782 S.W.2d 36, 38 (1989). "[T]he view is generally taken that [public officials] may consider the differences or variations in the character or quality of the materials, articles, or work proposed to be furnished by the various bidders, in determining whether to accept any of the bids, or which bid to accept." *Worth James Construction Co. v. Jacksonville Water Commission*, 267 Ark. 214, 217, 590 S.W.2d 256, 258 (1979) (quotations omitted). On the undisputed facts of record, that's what happened here.

Joyner's bid would have cost the city $135,000 to clear two acres over a six-week period. Put differently, that's $67,500 an acre. The city, however, never abandoned its plans to clear all thirty acres. The purpose of the second-round bids was simply to clear the first two acres ASAP so construction could begin on time, two months later. Pambianchi, on the other hand, bid to clear all thirty acres at a cost of $7,260/day. The problem? He didn't give a timeline. The solution?

Ask him.  That's what the city did.  And all this was done on the public record at the January 31st city council meeting.

Well, says Joyner, the jury should decide whether the city acted in bad faith.  *E.g.*, *Worth*, 267 Ark. at 217-18, 590 S.W.2d at 258-59.  The Court disagrees.

First, Joyner's claim that "Pambianchi did not submit a revised bid" is mistaken.  *Doc. 39 at 3*.  Pambianchi's second bid was in writing.  It was dated "January 27, 2022."  It was styled as an "amended quote."  And it added equipment costs that were not included in his first bid.  Compare *Doc. 23-1 at 48* (second bid) with *Doc. 23-1 at 31* (first bid).

Second, Joyner says: "[I]t was declared by the committee at the meeting that Joyner['s] bid was the lowest; at that point, Joyner left the meeting." *Doc. 40 at 4-5*.  But no such declaration was made on the meeting's written or audio record.  And the audio recording captured an exchange between Joyner and city council members *after* they determined Pambianchi's bid total to be $130,200.  *Doc. 28 at 0:20:17–0:20:24*.

Looseness there was.  Bad faith there wasn't.  The city rationally and justifiably calculated Pambianchi's second bid as one to clear all thirty acres within twenty days.  The difference between the high-end estimate ($145,800) and the low-end estimate ($130,200) is immaterial.  Joyner's bid was to do less work over a longer period.  He was not the lowest bidder.  Therefore, he had no property interest in the contract.

**Race Discrimination.** Joyner next claims the city interfered with his rights to make and enforce a contract in violation of 42 U.S.C. § 1981. He says the city's bidding process was "laced with unfairness and favoritism and that it was animated by a desire for a white bidder over a black one." *Doc. 40 at 16*. He points to:

- The mayor's three-month delay in advertising for the first-round bids;
- The ten-day window to submit first-round bids;
- His difficulties getting a bid packet from the city;
- The city's decision to narrow the project's scope;
- The city's failure to advertise for second-round bids; and
- The city council's "ad hoc" bid meeting on January 31st.

*Doc. 40 at 2-4.*

Because Joyner hasn't presented any direct evidence of race discrimination, the Court applies *McDonnell Douglas*'s burden-shifting framework. *Harris*, 452 F.3d at 717. To make a *prima facie* case, Joyner must show three things: (1) membership in a protected class; (2) that the city intended to discriminate against him on the basis of race; and (3) that the discrimination interfered with his ability to make a contract. *Harris*, 452 F.3d at 718. Because he has not presented "evidence sufficient to create an inference" of discriminatory intent, he has not established a *prima facie* case. *Ibid.*

-8-

First, Joyner points to the Mayor Simon's three-month delay (October 2021 to January 2022) in advertising for the first-round bids. But the meeting minutes from the city council's 11 January 2022 meeting state that another individual, Lonzell Dodds, withdrew an earlier offer to clear the land. *Doc. 23-1 at 3.*

Second, Joyner says the ten-day submission window was shorter than the normal thirty days. True. But the city was "working against time" and needed the land cleared "as soon as possible." *Doc. 28 at 0:03:23–0:04:47.* Plus, Joyner admits he saw the ads in the paper.

Third, Joyner says the mayor's office refused him a bid packet, which is why he missed the original January 21st deadline. But the street department—not the mayor's office—was handling the bid packets. And he admits that the street department gave him a packet when he asked for one. In any event, there were no "standardized bid sheets for this project." *Doc. 23-1 at 44.* The street department's superintendent merely "redacted the pricing on Clark and Pambianchi's bids and provided Mr. Joyner with the redacted copy of the two bids to serve as an example." *Ibid.*

Fourth, Joyner hasn't created a genuine dispute of material fact on when the city changed the project's scope. In an affidavit attached to his response, Joyner said: "I clearly recall that the information I received regarding the change of criteria for the bid came before

January 21, 2022." *Doc. 39-1 at 3*. But on deposition, he said he learned of the changes about "three or four days" before second-round deadline, which was January 31st. *Doc. 23-1 at 12*. Plus, Pambianchi's first-round bid was dated January 23rd. Joyner cannot abandon his prior testimony by contradicting it in a later affidavit. *Frevert v. Ford Motor Co.*, 614 F.3d 466, 474 (8th Cir. 2010).

Fifth, Joyner says the city never gave him any formal notice of the city council's special meeting on January 31st. But, unlike Clark and Pambianchi, neither the mayor nor the city council had heard from him. The street department's superintendent called Joyner two hours before the meeting because he "hadn't turned [his bid packet] back in." *Doc. 23-1 at 15*. And the city council accepted his bid at the meeting.

At bottom, there is no evidence that city officials intended to discriminate against Joyner based on race. If anything, the record shows that some even went out of their way to help him submit a bid. The Court cannot draw a reasonable inference of race-based discrimination on these facts.

**Illegal Exaction.** The illegal exaction claim fails, too. The city sought summary judgment on it. Joyner has not responded with a meaningful argument, any authority, or any citations to the record. *Doc. 40 at 19*. That's a waiver. *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020).

\*

The city's motion for summary judgment, *Doc. 23*, is granted. This case will be dismissed with prejudice. Judgment will issue.

So Ordered.

*W.P.Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

2 August 2024